NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM CHARLES and TERESA CHARLES, on behalf of themselves and all individuals similarly situated, | : : : : : : : : : : : : : : | Civil Action No. 06-2361 (JAG) |
| Plaintiffs, | | OPINION |
| v. | | |
| LAWYERS TITLE INSURANCE CORPORATION, | | |
| Defendant. | | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on defendant Lawyers Title Insurance Corporation's ("Defendant") motion for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c). For the reasons stated below, the motion will be DENIED.

BACKGROUND

On August 29, 2005, William and Teresa Charles ("Plaintiffs") refinanced the existing mortgage on their home located in West Milford, New Jersey. (Class Action Complaint ("Compl.") ¶ 33.) In order to secure the transaction, Plaintiffs purchased title insurance from Defendant. (Id. ¶ 34.)

Title insurers in New Jersey are required to submit a schedule of fees which they plan to use in the State. (Id. ¶ 28.) As a member of the New Jersey Land Title Insurance Rating Bureau

1

and a subscriber to the Bureau's New Jersey Manual of Rates and Charges (the "Rate Manual"), Defendant fulfilled this legal obligation. (Id. ¶ 30.) The Rate Manual has different title insurance rates depending on whether the person applying for title insurance is refinancing or not. (Id. ¶ 31.) Paragraph 4.6.1 of the Rate Manual lists a discounted refinance rate for all applicants for title insurance and states, "[w]hen a refinance . . . loan is made to the same borrower on the same property, the following rates shall apply . . ." (Id. ¶ 32.)

Although Plaintiffs were applying for title insurance in connection with refinancing their mortgage, Defendant charged Plaintiffs $948.25, which was an overcharge of $240.00, according to the Rate Manual. (Id. ¶ 35; Id., Ex. B.) Specifically, Plaintiffs allege that Defendant failed to give numerous other title insurance applicants who were refinancing the same discounted rate. (Id. ¶ 38.)

On May 24, 2006, Plaintiffs filed suit in this Court, alleging violations of the New Jersey Consumer Fraud Act, fraudulent and negligent misrepresentation, and unjust enrichment. Plaintiffs hope to certify a class of similarly situated homeowners who seek refunds for the amount they were charged over the discounted refinance rates they should have been charged at the time they refinanced their mortgage. On September 20, 2006, Defendant filed the instant motion.

## STANDARD

**I.    Governing Legal Standards**

    A.    <u>Standard for a Rule 12(c) Motion for Judgment on the Pleadings</u>

The standard for a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is the same as that for a motion to dismiss under FED. R. CIV. P. 12(b). See <u>Spruill v. Gillis</u>, 372

F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards."). Because the legal standards do not differ, this Court will use the word "dismiss" in this opinion to refer to the action sought by the motion for judgment on the pleadings.

      B.      Standard for a Rule 12(b)(6) Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim . . . showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S. Ct. at 1959. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000).

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (abrogated on other grounds Twombly, 127 S. Ct. 1955). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

This Court's review of a motion to dismiss for failure to state a claim is limited to the contents of the complaint, including any attached exhibits. See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Caine v. Hardy, 943 F.2d 1406, 1411 n.5 (5th Cir. 1991).

C.   Rule 9(b)

FED. R. CIV. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (citing Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir.

1984)).  To satisfy Rule 9(b), a plaintiff must "plead with particularity the 'circumstances' of the alleged fraud."  Rolo, 155 F.3d at 658 (citing Seville Indus. Machinery, 742 F.2d at 791).  Rule 9(b) "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'"  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).  Plaintiffs need not, however, "plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  Rolo, 155 F.3d at 658 (citing Seville Indus. Machinery, 742 F.2d at 791).  The Third Circuit has cautioned that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants."  Rolo, 155 F.3d at 658 (citing Christidis v. First Pennsylvania Mortg. Trust, 717 F.2d 96, 99 (3d Cir. 1983)).

## ANALYSIS

### I.   Initial Matters

In response to this motion, Plaintiffs submitted 209 pages of exhibits.  On a motion to dismiss, the district court may not "consider matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Pursuant to FED. R. CIV. P. 12(c), a district court has the discretion to convert a motion for judgment on the pleadings to a motion for summary judgment, pursuant to FED. R. CIV. P. 56, if the district court considers a) anything outside the pleadings, b) any exhibits attached to the pleadings, c) matters of public record, and d) any documents integral to or implicitly relied upon in the Complaint.  See Burlington Coat Factory, 114 F.3d at 1426.  Where a district court chooses to make such a conversion, the "parties shall be given reasonable opportunity to present all material made

pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(c). Despite Plaintiffs' submission, this Court has not considered any documents outside the pleadings, and analyzes this motion as one for judgment on the pleadings.

## II. Standing

Defendant's first argument is that there is no actual case or controversy among the parties because Defendant tendered the full amount of Plaintiffs' individual damages before the Complaint was filed. Defendant argues that, as a result, the case has been mooted.

Defendant argues, in essence, that Plaintiffs lack standing. Mootness is the "doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." United States Parole Commission v. Geraghty, 445 U.S. 388, 397 (1980) (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). Defendant offered to remedy the alleged injury prior to the initiation of the suit. Thus, Defendant is arguing that there was no case or controversy at the time of the commencement of the action, which is an issue of standing. Defendant's motion cites only to precedent concerning mootness, however.

"The federal 'judicial power' extends only to 'Cases' or 'Controversies.'" Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992) (citing U.S. CONST. art. III, § 2). "The 'case or controversy' requirement demands that a cause of action before a federal court present a 'justiciable' controversy, and 'no justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by subsequent developments . . . .'" Id. (quoting Flast v. Cohen, 392 U.S. 83, 95 (1968)). "A party's case or controversy becomes moot either when the

6

injury is healed and only prospective relief has been sought or when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." Alexander v. Yale Univ., 631 F.2d 178, 183 (1980).  "[O]nce the controversy ceases to exist the court must dismiss the case for lack of jurisdiction."  Lusardi, 975 F.2d at 974.

"[S]pecial mootness rules apply in the class action context, where the named plaintiff purports to represent an interest that extends beyond his own."  Id.  "Once a class has been certified, mooting of the class representative's claims does not moot the entire action because the class 'acquires a legal status separate from the interest asserted [by its named plaintiff].'"  Id. (quoting Sosna v. Iowa, 419 U.S. 393, 399 (1975)).  However, "when claims of the named plaintiffs become moot before class certification, dismissal of the action is required," because "there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution."  Id. (quoting Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1041 (5th Cir. 1981)).  An offer, alone, of complete relief in an individual action moots the litigation.  Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991).  The reasoning behind this rule is that "[o]nce the Defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate."  Id.

This reasoning cannot apply to standing.  Here, the offer to repay the overcharge, alone and without acceptance, is insufficient to show that Plaintiffs lack standing.  At the time the offer was made, prior to the filing of the Complaint, Defendant had no way of knowing whether the offer would satisfy Plaintiff's entire demand because there were no demands set forth.

Indeed, the underlying basis for Monsanto, and other cases which moot claims based on

7

offers of judgment, without acceptance, which fully satisfy the plaintiff's demands, is that *all* the wrongs alleged in the Complaint will be righted, to the full extent allowed, by the offer of settlement.  See Monsanto, 926 F.2d at 598.  Before the filing of the complaint, the wrongs that might be alleged are not subject to definition.  Thus, Defendant's argument is that before an action commences, the unsolicited and unaccepted offer of settlement can defeat standing.  This cannot be so.

In addition, Defendant's offer, had it been made after the commencement of this action would not satisfy Plaintiffs' entire demand because under the CFA, Plaintiffs are entitled to treble damages on a successful claim.  The Third Circuit, when addressing whether an offer presented to a plaintiff is sufficient to moot the entire case, includes in its calculation the statutory maximums, attorney's fees, and court costs.  See Goodmann v. People's Bank, 209 Fed. App'x 111 (3d Cir. 2006) (in holding that an offer was sufficient to moot the entire case, the Circuit addressed whether the plaintiff would have been entitled to a greater amount under the applicable statute, and the applicable attorneys' fees and costs).

Here, Defendant only offered repayment of the overcharge and attorney's fees.  Even if this Court addressed the offer as one made after the complaint was filed, the mootness analysis does not result in a dismissal of this claim.

Finally, even if the offer is taken as still open at this moment in the case, and if the offer is considered to satisfy Plaintiffs' entire demand, the matter is foreclosed by Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004).  In Weiss, a plaintiff filed a class action under the Fair Debt Collections Practices Act ("FDCPA").  Before the plaintiff could move to certify the class, the defendants made a FED. R. CIV. P. 68 offer of judgment.  Weiss, 385 F.3d at 340.  The Weiss

Court recognized that there is "considerable authority that once a motion for class certification has been filed, the 'relation back' doctrine . . . comes into play," allowing the class certification to relate back to the filing of the complaint. Id.  The Weiss Court held that "[a]bsent undue delay in filing a motion for class certification, therefore, where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint." Id.  If this Court a) considered the offer still open, and b) considered the offer to be for complete satisfaction of Plaintiffs' claims, which this Court does not, the class claims would still survive under Weiss.

Under any possible analysis, Defendant's offer does not provide grounds for dismissal. Defendant's motion to dismiss based on lack of standing or mootness of the claim is denied.

### III.  Constructive Knowledge of the Refinance Rates

Plaintiffs' claims for consumer fraud (Count I), common law fraud (Count II), and negligent misrepresentation (Count III) all rest on the premise that Defendant "misrepresent[ed] the applicable rate for title insurance," and has "knowingly and willfully fail[ed] to inform customers who qualify for refinance rates that they qualify for such rates."  (Compl. ¶¶ 46, 51, 53, 60.)  Defendant argues that these claims cannot be maintained because Plaintiffs are charged with constructive knowledge of the rates filed with the New Jersey Department of Banking and Insurance ("NJDBI").

Defendant bases this argument on an isolated portion of the "filed rate doctrine."  The filed rate doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority."  Weinberg v. Sprint Corp., 173

N.J. 233, 242 (2002) (quoting Fax Telecommunicaciones, Inc. v. AT&T, 138 F.3d 479, 488 (2d Cir. 1998). "[T]he [Federal Communications Act] does not permit either a [customer's] ignorance or the carrier's misquotation of the applicable rate to serve as a defense to the collection of the filed rate." Id. (quoting Fax Telecommunicaciones, 138 F.3d at 488 (quoting Maislin Ind., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 120 (1990))). "[C]ustomers are 'conclusively presumed' to have constructive knowledge of the filed tariff. . . ." Id. (quoting Fax Telecommunicaciones, 138 F.3d at 489).

The filed rate doctrine bars claims that would "invalidate, alter or add to the terms of the filed tariff" or "challenge [the terms of a tariff] that [the] agency has reviewed and filed." Evanns v. AT & T Corp., 229 F.3d 837, 840 (9th Cir. 2000) (internal citations and quotation marks omitted); accord AT&T Corp. v. Cent. Office Tel. Inc., 524 U.S. 214, 229 (1998) (the filed-rate doctrine "pre-empt[s] only those suits that seek to alter the terms and conditions provided for in the tariff") (Rehnquist, C.J., concurring). The filed rate doctrine is intended to advance two policies: "(1) the prevention of price discrimination by carriers as among ratepayers; and (2) the preservation of the exclusive role of federal agencies in approving reasonable rates for telecommunication service and the exclusion of courts from the ratemaking process." Weinberg, 173 N.J. at 242.

Defendant attempts to turn this doctrine on its head by arguing that the constructive knowledge charged to Plaintiffs prohibits claims to *enforce* the established rates. Courts have recognized that this application of the "filed rate doctrine" is not appropriate. Brown v. MCI Worldcom Network Servs., Inc., 277 F.3d 1166, 1171-72 (9th Cir. 2002) ("The filed rate doctrine . . . prevents suits seeking to enforce agreements outside the tariff (i.e., indirectly challenging the

10

validity of a tariff)[,] as well as suits directly challenging the validity of a tariff. But it 'does not serve as a shield' staving off claims against a carrier based on the tariff itself."); Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 188 (D.D.C. 2001) ("[T]he filed-tariff doctrine bars courts from hearing any challenge to duly filed rates. . . . On the other hand, a claim that seeks to *enforce* the tariff may be brought in federal court.").

In Lipton, the United States District Court for the District of Columbia noted the critical importance, in allowing the plaintiff's claims to continue, that the plaintiff was "seeking enforcement of the rates duly filed in the tariff *as it stands*." Lipton, 135 F. Supp. 2d at 188. The plaintiff was not challenging the rates themselves, nor was the plaintiff claiming that the rates were excessive. Instead, she claimed a *violation* of the rate. Id.

The same logic applies here. Plaintiffs are not seeking to enforce an agreement made outside of the rates. Plaintiffs are not seeking to change the rates. Plaintiffs' claims seek to enforce the rates, as filed, by holding Defendant responsible for the alleged upward deviation from the rate without Plaintiffs' knowledge. Plaintiffs' claim is not contrary to the purpose of the "filed rate doctrine."

The "filed rate doctrine" does not bar Plaintiffs' claims for consumer fraud, common law fraud, and negligent misrepresentation. Therefore, Defendant's motion to dismiss is denied on this ground.

**IV.     Reasonable Reliance and Due Diligence**

Defendant argues that Plaintiffs' claims for common law fraud and negligent misrepresentation fail because Plaintiffs "cannot establish the required element of reasonable reliance." Defendant argues that Plaintiffs' reliance on the rates actually charged cannot be

11

reasonable, as a matter of law, because Defendant filed its rates with the NJDBI. Defendant also argues that Plaintiffs cannot demonstrate that they exercised due diligence to determine the filed rate applicable to the mortgage title insurance policy purchased by their lender. These arguments are reiterations of Defendant's "constructive knowledge" argument, and fail for the same reasons.[1]

It simply cannot be that an industry which is required, by law, to file the rates it charges with an administrative agency or governmental entity can be shielded from any fraud or negligent misrepresentation claims based on that fact. Just as the "filed rate doctrine" does not create constructive knowledge to bar these claims, the fact that rates were filed does not eliminate Plaintiffs' claims based on lack of reasonable reliance.

The Supreme Court of New York, in analyzing a case involving essentially the same facts and allegations, may have summed up the reason for the failure of this argument best: "it is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars, would choose to pay the higher rate and forego a savings mandated by law." In re Coordinated Title Ins. Cases, 784 N.Y.S.2d 919 (Table), 2004 WL 690380, at *9 (N.Y. Sup. Ct., Jan. 8, 2004).

Defendant fails to demonstrate that, as a matter of law, a) Plaintiffs cannot establish the element of reasonable reliance; or b) that Plaintiffs failed to exercise due diligence. Defendant's

---

[1] Defendant's due diligence argument can also be dismissed, independently, because due diligence is an affirmative defense that requires a factual review. See 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34(4)(b) (3d ed. 2005) ("Defenses that require a factual review to be established . . . should not support a dismissal for failure to state a claim."). For purposes of a motion for judgment on the pleadings, this Court must take all Plaintiffs' allegations as true. See FED. R. CIV. P. 12(c). Due diligence is not an element of any of the claims set forth by Plaintiffs. The failure to allege due diligence is not fatal to Plaintiffs' claims.

motion to dismiss Plaintiffs' claims of common law fraud and negligent misrepresentation based on this argument is denied.

## V.     Defendant Argues that Plaintiffs Fail to Allege Any Affirmative Misrepresentation, or, Alternatively, Any Duty to Disclose

Defendant argues that Plaintiffs' claims for a) violation of the NJCFA (Count I), b) state common law fraudulent misrepresentation claim (Count II), and c) state common law negligent misrepresentation (Count III) should be dismissed for failure to allege, with the particularity required by FED. R. CIV. P. 9(b), any affirmative misrepresentation made by Defendant. Defendant argues further that if this Court finds no allegations of an affirmative misrepresentation, then it must dismiss because Plaintiffs cannot, and have not, alleged any duty to disclose such that silence can be the basis for a claim of fraud.[2]

### A.     To what claims does Rule 9(b) apply?

Plaintiffs do not dispute that Rule 9(b) applies to the NJCFA and fraud claims. Nonetheless, this Court must determine whether Rule 9(b) applies to the claim for negligent misrepresentation. Under the holding of In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256 (3d Cir. 2006), Rule 9(b) applies to claims which sound in fraud.

In Suprema, as in the instant case, the plaintiffs described their action generally as arising from fraud. Id. at 270. The Suprema Court, discussing Cal. Pub. Employees'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 162 (3d Cir. 2004) ("CALPERS"), noted that, in both cases, "a core theory of fraud permeates the action." Suprema, 438 F.3d at 272. Yet the Suprema Court distinguished CALPERS and, in doing so, made clear that the fact that a complaint's core theory

---

[2] Defendant does not challenge Count IV of the Complaint, the claim for unjust enrichment, based on these arguments.

is fraud does not mean that every claim sounds in fraud.  Id.  The Suprema Court held that a plaintiff may carve claims out from the core theory of fraud and avoid the requirements of Rule 9(b).  Id. at 272.  Specifically, "claims do not sound in fraud if ordinary negligence is expressly pled in connection with those claims."  Id.

Here, Plaintiffs have carved out Count III from the core theory of fraud.  Despite incorporating the preceding allegations of fraud, Plaintiffs do expressly allege a cause of action for negligent misrepresentation expressly in the third claim.  (Compl. ¶¶ 59-65.)  Following Suprema, the requirements for effectively carving out a claim are easily met: "Here, ordinary negligence is alleged . . . and those claims are pled separately from the . . . fraud claims against the same defendants.  That is enough to avoid triggering Rule 9(b)."  Id. at 273.  Similarly, in the instant case, because negligent misrepresentation is expressly alleged in the third claim, and because the third claim is pled separately from the fraud claims, that is enough to avoid triggering Rule 9(b).  Thus, this Court does not consider Defendant's motion to dismiss on the grounds of lack of an affirmative representation under the Rule 9(b) standard.  This portion of Defendant's motion does not affect the negligent misrepresentation claim.

      B.      Under Rule 9(b) Plaintiffs Have Alleged an Affirmative Misrepresentation Sufficient to Support the Claim for Fraudulent Misrepresentation

Defendant argues that Plaintiffs have not alleged an affirmative misrepresentation sufficient to support a claim for fraudulent misrepresentation.  Specifically, Defendant argues that the allegation that it "supplied false, misleading, inaccurate[,] and incomplete information about the applicable rate for title insurance by charging the plaintiffs [$948.25] for title insurance, amounting to an overcharge of approximately [$240.00]," along with the HUD-1 form

14

attached to the Class Action Complaint, are insufficient to state an affirmative misrepresentation. (Compl. ¶ 35.) The HUD-1, Defendant argues, itemizes the various closing costs and is intended to be used as a statement of the actual charges. (Def.'s Br. 13.) Defendant argues that because the HUD-1 lists the actual charges, the amount listed for title insurance cannot be a "misrepresentation." (Id.) Defendant's arguments draw a false distinction.

The HUD-1 is a "statement of actual charges and adjustments to be given to the parties in connection with the settlement." 24 C.F.R. Part 3500, Appendix A. However, the fact that the HUD-1 displays "actual charges" does not lead to the conclusion that the HUD-1 cannot be part of a sufficient allegation of an affirmative misrepresentation. Drawing the distinction between what the HUD-1 shows at the time of the closing, and what is clearly implied by what is contained in the HUD-1, is excessive even under the Rule 9(b) framework. Although it does not explicitly set forth the misrepresentation in exact words, it is clear that before the closing, Defendant quoted a price for title insurance to Plaintiffs which was above what Defendant is allowed to charge pursuant to the filed rates. The HUD-1 demonstrates that this price was actually charged. Further, Defendant acted as the settlement agent for this transaction, and, therefore, drafted the HUD-1. (Compl. Ex. B.)

Even under the heightened standard of Rule 9(b), Plaintiffs' allegations in paragraphs 35 through 38 of the Complaint, along with the HUD-1, clearly demonstrate the "'who, what, when, where, and how'" of the alleged fraud. See In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)). The HUD-1, as prepared by Defendant, sets forth the parties to the transaction, where it occurred, when it occurred, and what funds were sent to which parties. It also makes clear implicitly that at some

point before the date of the HUD-1, Defendant misquoted the price for title insurance. Rule 9(b) merely requires that the Complaint "provide[] sufficient information for the Defendant[s] to 'prepare a defense as to the particular allegations of fraud.'" Gallerstein v. Berkshire Life Ins. Co. of Am., No. 05-5661, 2006 WL 2594862, *6 (D.N.J. Sept. 11, 2006) (quoting Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (abrogation on other grounds recognized by Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000))). The HUD-1 and Plaintiffs' allegations in the Class Action Complaint provide "sufficient information."

Defendant's motion to dismiss for failure to allege an affirmative misrepresentation is denied. Further, because this Court finds that Plaintiffs have alleged an affirmative misrepresentation to support its claim for fraudulent misrepresentation, this Court need not address Defendant's claim that there is no duty to disclose.

## CONCLUSION

Defendant fails to demonstrate, as a matter of law, that the offer to settle the dispute between the Plaintiffs and Defendant, made prior to the filing of the Class Action Complaint, defeats standing. Defendant further failed to demonstrate that the filed rate doctrine prevents Plaintiffs from crafting a claim upon which relief may be granted. Finally, Defendant fails to demonstrate that Plaintiffs did not plead any affirmative misrepresentation. For the reasons stated above, Defendant's motion to dismiss Plaintiffs' Class Action Complaint is denied as to all Counts.

Dated: July 2, 2007

  S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.